```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/30/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIAS DANIEL MONTENEGRO GUDINO,

               Petitioner,

-against-

JUDITH ALMODOVAR, in her official capacity as Acting New York Field Office Director, U.S. Immigration & Customs Enforcement;

KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security;

TODD M. LYONS, in his official capacity as Acting Director of Immigration & Customs Enforcement; and

PAMELA BONDI, in her official capacity as Attorney General, U.S. Department of Justice,

               Respondents.

1:26-cv-00402-MKV

ORDER

MARY KAY VYSKOCIL, United States District Judge:

      Petitioner initiated this habeas corpus action on January 15, 2026, by filing a petition. [ECF No. 1] (the "Petition"). In response to a Scheduling Order issued by the Court, [ECF No. 3], Petitioner filed an emergency application for an Order "directing Respondents to show cause why, during the pendency of this habeas action, [Petitioner] should not be moved from the jurisdiction of the District of New Jersey or the Southern District of New York[.]" [ECF No. 4] at 2. Later that day, the parties consented to an expedited briefing schedule, as well as to the entry of an Order enjoining Immigration and Customs Enforcement ("ICE") from transferring the Petitioner out of the geographic area encompassed by the Southern District of New York, the Eastern District of New York, and the District of New Jersey during the pendency of this action, [ECF No. 5], which the Court endorsed. [ECF No. 6].

1

Thereafter, on an emergency schedule, Respondents submitted a letter in opposition to the Petition, [ECF No. 8] (the "Government's Letter" or "Gov't Letter"), accompanied by a Return, [ECF No. 9] (the "Return"),[1] and the Declaration of Supervisory Detention and Deportation Officer John Tucciarone ("Officer Tucciarone"), [ECF No. 10] (the "Declaration" or "Decl."). Petitioner, likewise on an emergency basis, submitted a letter in reply, [ECF No. 11] (the "Petitioner's Letter" or "Pet. Letter").

## BACKGROUND

Petitioner, a citizen of Venezuela, illegally entered the United States on December 31, 2023, at or about 6:00 AM. 2023 Form I-213 at 1. He was apprehended in the El Paso, Texas, Border Patrol Sector about an hour later, and transferred to the El Paso Central Processing Center for further processing. *Id* at 1–2. Thereafter, on January 5, 2024, Petitioner was served with a Notice to Appear ("NTA") charging him with inadmissibility as an alien present in the United States without having been admitted or paroled, or who had arrived in the United States at a time or place other than as designated by the Attorney General. Decl. ¶ 5 (citing 8 U.S.C. § 1182(a)(6)(A)(i)). The NTA was not prosecuted. *Id.* On the same day, Petitioner was released on his own recognizance "[i]n accordance with section [8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations." Form I-220A and Cancellation; Form I-286. The

---

[1] The Return, which fails to accurately and comprehensively catalogue its own exhibits, attaches the following: [ECF No. 9-1] (Form I-213 Record of Deportable/Admissible Alien, dated December 31, 2023) (the "2023 Form I-213" or the "2023 Record")); [ECF No. 9-2] (I-220A, Order of Release on Recognizance, dated January 5, 2024, and a cancellation order thereof, dated January 15, 2026) (the "Form I-220A and Cancellation" or the "2024 Release Order" and the "2026 Release Order Cancellation"); [ECF No. 9-3] (Form I-862 Notice to Appear dated January 15, 2026) (the "Form I-862" or the "2026 NTA")); [ECF No. 9-4] (Form I-200 Warrant for Arrest of Alien, dated January 15, 2026) (the "Form I-200" or the "2026 Warrant")); [ECF No. 9-5] (the Government's brief in *Liang v. Almodovar*, 25 Civ. 9322 (MKV)); [ECF No. 9-6] (the Government's brief in *Chen v. Almodovar*, No. 25 Civ. 8350 (MKV)); [ECF No. 9-7] (Initial Custody Determination, dated January 15, 2026) (the "Form ICD" or the "2026 Initial Custody Determination"); [ECF No. 9-8] (Form I-213 Record of Deportable/Inadmissible Alien, dated January 15, 2026) (the "2026 Form I-213" or the "2026 Record")); [ECF No. 9-9] (Form I-286 Notice of Custody Determination, dated January 5, 2024) (the "Form I-286" or the "2024 Custody Determination").

2

Form I-220A required, among other conditions, that Petitioner "surrender for removal from the United States if so ordered." Form I-220A and Cancellation.

On January 15, 2026, Petitioner reported to the ICE office at 26 Federal Plaza, New York, NY, for an in-person check-in required under the terms of his release. Decl. ¶ 9. Upon a review of his case, *id.*, Petitioner's release was terminated, and he was "taken into custody for removal." Form I-220A and Cancellation. At 11:44 (presumably in the morning), an initial custody determination was made, in the course of which it was determined that Petitioner was "NOT subject to [8 U.S.C. § 1226(a)][,]" that Petitioner had established that he did "not pose a danger to persons or property[,]" that Petitioner had established that he did "not pose a flight risk[,]" and that, notwithstanding that Petitioner had established that he did not "pose a flight risk[,]" it had nevertheless been determined "that no forms of release on conditions [could] mitigate the risk of flight." Form ICD. Petitioner was "served with another [NTA] and placed in removal proceedings per [8 U.S.C. § 1182(a)(6)(A)(i)]." 2026 Form I-213 at 3; Form I-862. An "immigration officer authorized pursuant to [8 U.S.C. §§ 1226, 1357] and [8 C.F.R. Part 287] to serve warrants of arrest for immigration violations[,]" namely Officer Tucciarone, executed and served on Petitioner a warrant. Form I-200. Petitioner declined the option to pursue Incentivized Voluntary Departure. 2026 I-213 at 4.

## ANALYSIS

Petitioner concedes that this Court's decisions in *Chen v. Almodovar*, No. 25 Civ. 8350 (MKV), 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) and *Liang v. Almodovar*, No. 25 Civ. 9322 (MKV), 2025 WL 3641512 (S.D.N.Y. Dec. 15, 2025) control. Pet. Letter at 3. The sole distinction he seeks to make is that "[t]he record . . . in this matter overwhelmingly shows that the Executive

3

Branch (both in the Biden and Trump administrations) understood that Petitioner's release in 2024, and subsequent re-detention in 2026, was pursuant to 8 U.S.C. § 1226." Pet. Letter at 1.

Specifically, Petitioner points to certain forms executed by field-level immigration officers during various encounters with Petitioner over the course of his unlawful presence in the United States (the 2024 Release Order, the 2024 Custody Determination, the 2026 Warrant, and the 2026 Initial Custody Determination), each of which cites in some manner to 8 U.S.C. § 1226. Pet. Letter at 1–2. Petitioner argues that these citations mean that he is detained under 8 U.S.C. § 1226, such that he is entitled to an "individualized [custody] determination[.]"[2] Pet. Letter at 1 (quoting Form ICD).

With respect to the 2024 Release Order and the 2024 Custody Determination, which effectuated Petitioner's 2024 release on his own recognizance, *see* Form I-220A; Form I-286, the Court previously has declined to hold that "Petitioner's conditional parole under Section 1226(a)(2)(B) . . . require[s] that any subsequent detention [likewise] occur under 1226." *Liang*, 2025 WL 3641512, at *5 (citing *Chen*, 2025 WL 3484855, at *8); *see also Chen v. Almodovar*, No. 25 Civ. 9670 (JPC), 2026 WL 100761, at *14 (S.D.N.Y. Jan. 14, 2026) ("This conclusion holds true even though Chen was initially detained—shortly after crossing the border—and released on his own recognizance, purportedly under Section 1226." (citing *Chen*, 2025 WL 3484855, at *8)); *Weng v. Genalo*, No. 25 Civ. 9595 (JHR), 2026 WL 194248, at *7 (S.D.N.Y. Jan. 25, 2026) ("The

---

[2] Petitioner is correct to note that the record now before the Court "is more significant and instructive than what was before the Court in [connection with] its decisions in" *Chen* and *Liang* with respect to the argument he raises. *Cf. Chen*, 2025 WL 3484855, at *2 ("Petitioner alleges 'on information and belief' that he was released pursuant to 'an order of release on recognizance under . . . 8 U.S.C. § 1226.' "), & n.2 ("The Court notes . . . that the 'Warrant for Arrest of Alien' the government submitted is addressed, 'To: any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations[.]' "); *Liang*, 2025 WL 3641512, at *2 n.6 ("Not least because it has not been asked to do so by the Petitioner, the Court here declines to impose extra-statutory process requirements on the Government because the Government chose to issue a warrant when it seems no warrant was required."). Nevertheless, as set forth more fully in this Opinion, the Court is not persuaded to abandon the reasoning developed in its decisions in *Chen* and *Liang*.

4

statute 'does not say that if an alien is released pursuant to Section 1226 any rearrest must also be made pursuant to Section 1226 with any attendant protections under that statute.' " (quoting *Chen*, 2025 WL 3484855, at *8)).

Petitioner's sole remaining argument is that the 2026 Warrant and 2026 Initial Custody Determination executed in connection with Petitioner's 2026 detention, *see* Form I-200; Form ICD, "show[] that even ***today***, the Executive Branch—including the current administration—[understands] that the detention of aliens in the United States is pursuant to 8 U.S.C § 1226." Pet. Letter at 2 (emphasis original). But if one thing is made clear by the very existence of this litigation, it is that the Executive Branch emphatically does not share Petitioner's understanding. *See* Decl. ¶ 10 ("Petitioner was detained under . . . 8 U.S.C § 1225(b)(2)(A), as an alien who is an applicant for admission, but who is not clearly and beyond a doubt entitled to be admitted."). Instead, as is virtually beyond debate, "it is the position of DHS that applicants for admission are subject to detention under Section 1225(b) and may not be released from ICE custody except by Section 1182(d)(5) parole." *Liang*, 2025 WL 3641512, at *3 (cleaned up) (quoting Memorandum from ICE to All ICE Employees (Jul. 8, 2025) at 1). And this position is not discretionary. *See Chen v. Almodovar*, 2026 WL 100761, at *6 (citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025); Respondents' Memorandum of Law in Opposition at 11 & n.3, *Chen*, 25 Civ. 9670 (JPC))). In any event, as Petitioner is aware, this Court already has held that "the statute clearly applies, according to its plain terms," in the manner asserted by the Executive Branch. *Chen*, 2025 WL 3484855, at *7. The various citations to 8 U.S.C § 1226 in the forms executed when Petitioner was taken into custody this year alter neither the Executive Branch's position as to the basis of its authority, nor the Court's reading of the plain text of that basis.

5

First, the 2026 Warrant tells us only that the immigration officer who executed it was "authorized" to do so "pursuant to [8 U.S.C. §§ 1226, 1357] and [8 C.F.R. Part 287]." Form I-200. This is not a case about the validity of that officer's "[p]ower and authority to arrest" under 8 C.F.R. Part 287.5(c). Nor is it a case about the validity of the 2026 Warrant under 8 U.S.C. § 1226. Nor is it even a case about the scope of the immigration officer's "[p]owers without a warrant . . . to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any" "law or regulation . . . regulating the admission, exclusion, expulsion, or removal of aliens" under 8 U.S.C. § 1357(a)(2). Instead, the question presented is whether Petitioner is "detained under § 1226(a) and therefore [has] the right to a bond hearing." Petition at 6. He is not, and the fact that an immigration officer served him with a warrant when one might not have been required does not change that conclusion. *See Liang*, 2025 WL 3641512, at *2 n.6; *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 227 ("Our acknowledgement that aliens detained under [8 U.S.C. § 1226(a)] may be eligible for discretionary release on bond does not mean that all aliens detained while in the United States with a warrant of arrest are detained under section [8 U.S.C. § 1226(a)] and entitled to a bond hearing before the Immigration Judge, regardless of whether they are applicants for admission under . . . 8 U.S.C. § 1225(b)(2)(A)." (quotation omitted)).

Similarly, the very first determination made in the 2026 Initial Custody Determination in this case was that Petitioner "is NOT subject to [8 U.S.C. § 1226(a).]" 2026 ICD. This effectively ends the inquiry. That fundamental legal reality is unaffected by the fact that the immigration officer filling out the form apparently ignored the instruction to "[s]kip" the rest of it as inapplicable, instead conducting an "individualized custody determination" when no such determination was required. *Id.* Again, the Court is not tasked with assessing whether this

6

unnecessary individualized determination would have been sufficient under 8 U.S.C. § 1226(a) and 8 C.F.R. Part 236.l(c)(8). *See* Pet. Letter at 1–2.

The Court takes Petitioner's point that, "until recently, no one envisioned § 1225(b)(2)(A) applying in this scenario." Pet. Letter at 2. While Petitioner's characterization is unduly hyperbolic, *see Fla. v. United States*, 660 F. Supp. 3d 1239, 1273 (N.D. Fla. 2023) ("The Court rejects DHS's argument and concludes that § 1225(b)'s 'shall be detained' means what it says and that is a mandatory requirement." (emphases omitted)), it is certainly true that since the recent shift in Executive Branch policy, *see Liang*, 2025 WL 3641512, at *3, the district courts have been flooded with petitions presenting the same question as does the Petition here.

No doubt, the Executive Branch is aware that "numerous judges in this district and other jurisdictions" agree with Petitioner as to the appropriate resolution of that question. Gov't Letter at 2. Indeed, that may well explain, in prophylactic terms, the decision to afford applicants for admission like Petitioner more process than that which is clearly due. Whatever the explanation, the Court declines to hold that the issuance of an unnecessary warrant, *see* Form I-200, or the execution of an inapplicable form, *see* Form ICD, somehow divests the Executive Branch of authority that otherwise "clearly applies," and that accordingly must be applied here. *Chen*, 2025 WL 3484855, at *7.

## **CONCLUSION**

For the foregoing reasons, the Petition is dismissed. The Clerk of Court is respectfully requested to terminate this case.

**SO ORDERED.**

**Date: January 30, 2026**  
**New York, NY**

*(signature: Mary Kay Vyskocil)*

**MARY KAY VYSKOCIL**  
**United States District Judge**